UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JADRANKA SAMONA,

              Plaintiff,                    Case No. 2:15-cv-11713

                                       District Judge Mark A. Goldsmith

v.                                  Magistrate Judge Anthony P. Patti

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

_____/

## RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 20) AND TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 22)

    **I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment, **DENY** Defendant's motion for summary judgment, **REVERSE** the

Commissioner's decision, and **REMAND** this case to the Commissioner and the

ALJ under Sentence Four of § 405(g) for further consideration consistent with the

report below.

**II.**    **REPORT**

    Plaintiff, Jadranka Samona, brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for disability insurance benefits and

supplemental security income.  This matter is before the United States Magistrate

Judge for a Report and Recommendation on Plaintiff's motion for summary

judgment (DE 20), the Commissioner's memorandum in opposition and cross

motion for summary judgment (DE 22), Plaintiff's reply (DE 23), and the

administrative record (DE 14).

### A.    Background

Plaintiff protectively filed her applications for benefits on August 6, 2011,

alleging that she has been disabled since March 16, 2011.  (R. at 146-154.)

Plaintiff's applications were denied and she sought a *de novo* hearing before an

Administrative Law Judge ("ALJ").  ALJ Richard Sasena held a hearing on

February 19, 2014.  (R. at 41-69.)  He subsequently determined that Plaintiff was

not disabled within the meaning of the Social Security Act.  (R. at 26-36.)   On

February 6, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at

14-16.)  ALJ Sasena's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action.

### B.    Plaintiff's Medical History

The undersigned has thoroughly reviewed Plaintiff's extensive medical

record.  In lieu of a lengthy summary of Plaintiff's medical history, I will provide a

brief summary below, with references and citations to the record as necessary in

response to the parties' arguments.

Plaintiff has had pain in her back, knee, and right ankle, as well as weakness in her right leg since a 1989 auto accident. (R. at 48.)[1] On September 21, 2009, Plaintiff presented to the Detroit Medical Center ("DMC") emergency department with complaints of chronic right knee pain. (R. at 290.) An x-ray of the knee revealed no acute fractures, but showed "rough edges" along the articular surface of the patella, which indicated chondromalacia of the knee. (R. at 295.) She was discharged to the orthopedic and sports medicine clinic for follow-up, and prescribed a dose of Toradol for the pain, to get her through her next shift at work. (Id.)

She was employed for eleven years as a registered radiological technologist, specializing in trauma. Her career ended in March 2011 after her "knee just gave out" while stepping over the dishwasher, resulting in a full length cast from the hip to the ankle until her surgery could be performed the following month. (R. at 46.) A March 14, 2011, DMC emergency department record shows a diagnosis of internal derangement of the knee. (R. at 384.) Plaintiff indicated that the pain was severe, although an x-ray revealed no evidence of acute fracture. (R. at 385.) She was discharged home with a knee immobilizer to follow up with Dr. Goitz. She was also instructed to stay off of work for four days. (Id.)

---

[1] Although Plaintiff testifies that the car accident occurred in 1989, the historical information in her medical records refers to it as a 1999 event. (R. at 318.)

3

Records from April 4, 2011 show that Plaintiff was seen again at the DMC emergency department complaining of worsening pain in her right knee. (R. at 390.) She indicated that she could no longer walk and that Vicodin did not provide relief. (R. at 391.)

Plaintiff underwent diagnostic and surgical arthroscopy of the right knee on April 29, 2011. (R. at 406.) She continued to have knee pain following the surgery (R. at 397-98, 415, 561), and was issued a disabled parking place card in July 2011 (R. at 563, 575-77.) In August 2011, she noted that she was losing her insurance, but continued to treat with her long-time physician, Dr. Lawrence Dell. (R. at 438.)

On May 18, 2012, Plaintiff saw orthopedist Henry T. Goitz, M.D., for an evaluation of her right knee pain. (R. at 318.) Dr. Goitz noted that the pain began after a motor vehicle accident in 1999. (Id.) By this time, Plaintiff had been administered physical therapy, Synvisc,[2] and cortisone injections, but the pain had gotten significantly worse.

---

[2] Synvisc is "an elastoviscous fluid containing hylan polymers produced from chicken combs." It is "indicated for the treatment of pain in osteoarthritis of the knee in patients who have failed to respond adequately to conservative nonpharmacologic therapy and simple analgesics, e.g., acetaminophen." Current Synvisc Package Insert, available at http://www.fda.gov/ohrms/dockets/ac/08/briefing/2008-4404b1-02%20Current%20Synvisc-One%20Package%20Insert.pdf (last accessed June 23, 2016).

4

Dr. Dell completed physical residual functional capacity questionnaires in April 2013 and March 2014, which are summarized more fully below. (R. at 700-706.) Plaintiff underwent a consultative evaluation with Ernesto Bedia, M.D., on March 7, 2014. (R. at 708-720.) Dr. Bedia noted that Plaintiff had limited range of motion in her right knee and could never kneel, crouch, or crawl, but indicated that she had a stable gait. (R. at 710 and 718.)

### C.   Hearing Testimony

#### 1.   Plaintiff's Testimony

At the February 19, 2014 administrative hearing, the 31-year old Plaintiff testified that she stopped working because of her above-described right knee injury and resulting surgery. (Id.) After the surgery, she was prescribed a wheelchair and used it for about six months. (R. at 48.) She also used a cane for an unspecified period of time, but stopped eight months prior to the hearing because she felt she was being judged for using a cane at her young age. (R. at 49.)

Post-surgery, she made three attempts at a fitness test that would allow her to return to her former job, but was ultimately unable to pass. (R. at 47.) She noted that she had about seven surgeries prior to the last one and had always been able to return to work afterward, but this time "the atrophy in my right quadriceps muscle increased and the muscle fibers didn't reattach to my patella." (R. at 51.) Plaintiff noted that she graduated with an Associate's Degree in applied science

5

and was working on her Bachelor's degree before her last surgery.  (R. at 50.)
However, she was missing two or three days of work per week prior to her surgery
because she would wake up unable to walk. (R. at 51.)  She noted that she would
have trouble at any job because she was "not punctual anymore" due to the pain.
(R. at 47.)  She also explained that she has trouble sleeping, getting about four
hours per night, and that her pain medications (Motrin 800, Norco, and Xanax)
make her "foggy" and "drowsy."  (R. at 47 and 57.)  She indicated that she takes
an hour long nap each day.  (R. at 57.)

Plaintiff described her knee pain as "knives and shooting sharp pain," and
noted that her knee locks up one to two times per day.  (R. at 51-52.)  She also
noted that she has ankle pain, because her right leg gives out, causing her to fall
and sprain her ankles.   (R. at 48.)  She clarified that she falls five to six times per
month because her "right leg feels like it turns to Jell-O and [her] knee will lock."
(R. at 53.)  Plaintiff ranked the pain at a six or seven out of ten on medication.  (R.
at 63.)  She indicated that the most comfortable position, where she spends most of
her day, is sitting backwards in a chair with her legs elevated, to help with
swelling.  (R. at 52.)

Plaintiff testified to having bursitis in her left and right hips, along with two
herniated discs.  (R. at 47.)  She described the hip pain as sharp and shooting,
causing her to walk with a limp to compensate.  (R. at 56.)  She ranked the pain as

6

a five or six out of ten, with medication.  (R. at 64.)  She described the lower back pain as sharp and throbbing.  (R. at 54.)  Plaintiff ranked the back pain as a six to seven out of ten, with medication.  (R. at 63.)  She underwent injections, physical therapy, and traction, which was sometimes helpful but provided only short-lived relief.  (R. at 54.)  She also uses a heating pad daily to help with the pain.  (R. at 63.)

Plaintiff was also diagnosed with anxiety, causing her to have panic attacks three times per week. (R. at 56.)  She noted that the attacks are triggered by pain and viewing pregnant women on television, because she had a child who was stillborn.  (R. at 56-57.)

Plaintiff testified that she could sit comfortably for ten to fifteen minutes, stand for five to ten minutes, walk half a block, and lift less than ten pounds.  (R. at 55.)  At the time of the hearing, Plaintiff lived alone in a ground floor apartment, and noted that stairs were "basically impossible."  (R. at 49.)  She indicated that she washes dishes, makes her food, and does laundry, albeit lazily.  (R. at 58.)  Her husband or sister in law take care of the rest of the chores.  (Id.)  On a typical day, she awakes at 9:30 or 10:00 am, and watches television until her sister in law arrives.  (R. at 60.)  She testified that she drives short distances by using her left foot instead of her right.  (R. at 59.)  She was separated from her husband at the time of the hearing, but noted that they are trying to make things work and that he

helps with her bills.  (R. at 50.)   Since their separation, she no longer has health

insurance, but has been able to continue seeing her primary care physician, Dr.

Dell, because of a deal they worked out.  (R. at 50, 53-54.)

Plaintiff testified that there was a promising new procedure she would like to

try, involving a robotic replacement of her knee and possibly her hip.  (R. at 60.)

She noted that she worked hard for her education, loved her job, and wanted to go

back.  (R. at 61.)

### 2.     Vocational Expert Testimony

Lynn Casalana testified as the Vocational Expert ("VE") at the

administrative hearing.  (R. at 66-69.)  The ALJ presented a series of hypotheticals

to the VE.  In the first hypothetical, the ALJ asked the VE to determine if a an

individual of Plaintiff's age and educational background could perform Plaintiff's

past relevant work at the sedentary exertional level with the following limitations:

> If such an individual was limited to sedentary work, could not use
> ladders, could not kneel or crawl.  Occasionally climb stairs, balance,
> stoop and crouch.  Would have to avoid unprotected heights and
> moving machinery and no right foot controls.  We would need a
> sit/stand option after about 15 minutes.

(R. at 66-67.)  The VE testified that the hypothetical individual could not perform

Plaintiff's past relevant work and there would be no transferrable skills.  (R. at 67.)

The VE clarified that the individual could perform the following jobs at the

sedentary unskilled level with a sit/stand option: sorting and inspecting, with 1,000

8

positions in Southeast Michigan and 100,000 nationally; packager, with 1,000

positions in Southeast Michigan and 125,000 nationally; and order clerk, with

1,200 positions in Southeast Michigan and 125,000 nationally.  (R. at 67.)  The VE

clarified that most employers allow two fifteen minute breaks, in addition to a

thirty-minute lunch, and would tolerate two absences per month.  (R. at 67.)

The ALJ then asked the VE to consider whether it would be work preclusive

if an individual needed to lie down for over an hour every day, and the VE testified

that it would.  (R. at 67-68.)  Next, the VE testified that a restriction to no

interaction with the general public and only occasional interaction with coworkers

would eliminate the order clerk position.  (R. at 68.)

## D.  THE ADMINISTRATIVE DECISION

On May 1, 2014, the ALJ issued his decision.  (R. at 26-36.)  At Step 1 of

the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the  review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

substantially gainful activity since her alleged onset date of March 16, 2011.  (R. at 28.)

At Step 2, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, depression, and post-traumatic stress disorder ("PTSD").  (R. at 28.)

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically Listings 1.02, 1.04, 12.04, and 12.06.  (R. at 29-30.)

Between Steps 3 and 4 of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff had the capacity to perform sedentary work:

> [E]xcept that she requires a sit/stand option after 15 minutes; never climb ladders, kneel or crawl; occasional climb stairs, balance, stoop and crouch; avoid all unprotected heights and moving machinery; no use of right foot controls; and the work must be limited to simple,

5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

routine, repetitive tasks (requiring little judgment and can be learned
in a short period).

(R. at 30.)

The ALJ determined at Step 4 that Plaintiff was unable to perform her past
relevant work. (R. at 34.)

At Step 5, the ALJ concluded that Plaintiff was capable of performing other
jobs that exist in significant numbers in the national economy. (R. at 34.) He
therefore concluded that Plaintiff was not disabled under the Social Security Act.

### E.   STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final
administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case
under the Social Security Act, the Court "must affirm the Commissioner's decision
if it 'is supported by substantial evidence and was made pursuant to proper legal
standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)
(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see
also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as
to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under
this standard, "substantial evidence is defined as 'more than a scintilla of evidence
but less than a preponderance; it is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241
(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

11

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.  ANALYSIS

Plaintiff asserts two statements of error.  First, she contends that the ALJ erred in his credibility assessment by not clearly explaining the bases on which he discounted her credibility, including the use of boilerplate language.  Second, she argues that the ALJ erred in his weighing of the opinion evidence by failing to give good reasons for discounting the opinions of her treating physician, Dr. Dell.  The Commissioner opposes Plaintiff's motion, asserting that she is entitled to a grant of summary judgment because substantial evidence supports the ALJ's conclusions.  I will address each argument in turn.

### 1.      Credibility

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor."  *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008); *see also Beavers v. Sec'y of Health, Ed., and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) ("The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.").  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers*, 486 F.3d at 475.

13

Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.*; *see also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011) ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect."). When assessing an individual's credibility, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011). The ALJ made this finding here, concluding that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. at 32.)

Upon making such a finding, the ALJ must next "consider the entire case record" to "evaluate the intensity, persistence, and functional limitations of the symptoms considering objective medical evidence." 20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p. A non-exhaustive list of relevant factors to be considered by the ALJ include: 1) the claimant's daily activities; 2) location, duration,

14

frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of medication; 5) treatment, other than medication; 6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and 7) other factors concerning functional limitations and restrictions. *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p; *see also Ewing v. Astrue*, No. 10-cv-1792, 2011 WL 3843692, at *9 (N.D. Ohio, Aug 12, 2011) ("Social Security Ruling 96-7p requires such factors to be *considered*, not *discussed* . . . .") (emphasis in original) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)).  In his or her opinion, the ALJ must "provide a sufficiently specific explanation for his [or her] credibility determination so that it is clear to the individual and any subsequent reviewers the weight given to the individual's statements and the reasons for that weight." *Malcolm v. Comm'r of Soc. Sec.*, No. 13-15188, 2015 WL 1439711, at *7 (E.D. Mich. Mar. 27, 2015) (citing *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1997)).

Here, Plaintiff argues that the ALJ committed reversible error in his credibility analysis by not providing an adequate basis for his decision.  She first points out that the ALJ uses a boilerplate credibility finding, that she was "not entirely credible for the reasons explained in this decision," which the Sixth Circuit has considered unhelpful.  *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th

15

Cir. 2015). In *Cox*, the court remanded the matter back to the Commissioner because the ALJ's "only explicit reference to Appellant's credibility consisted of the boilerplate quoted above," which explained "the extent to which the ALJ discredited Appellant's testimony, but not her reasons for doing so." *Id.*

The Commissioner asserts that in this matter, the ALJ provided additional explanation for his credibility finding and did not rely on boilerplate alone. Plaintiff counters that, while the ALJ cited other reasons, those reasons were not acceptable bases for discounting credibility. For example, she notes that the ALJ should not have pointed out that her financial interest in the outcome of the case distracted from her credibility. (R. at 32.) I find the ALJ's analysis in this respect troubling. As expressed previously in this district, the problem with this rationale is that it could be applied in virtually every case, thus excusing the ALJ from giving consideration to the testimony of the claimant. "No one, after all, is more interested in the outcome of a DIB case than the claimant." *Estep v. Comm'r of Soc. Sec.*, No. 15-cv-10329, 2016 WL 1242360, at *6 (E.D. Mich. Mar. 30, 2016). Nevertheless, while courts have expressed "some reservations" about similar assessments, they have deferred to the ALJ's credibility analysis where he or she provided additional valid reasons to discount credibility. *Blackburn v. Sec'y of Health & Hum. Servs.*, 996 F.2d 1214, at *6 (table) (6th Cir. 1993); *see also Estep*, 2016 WL 1242360 at *6 (concluding that while it was "permissible" for the ALJ to

16

take the plaintiff's husband's financial interest into account when considering his credibility, "the ALJ should also at least have considered the degree of consistency of his function report with the other evidence in the record.").

Accordingly, the undersigned must assess whether the ALJ's other credibility findings, apart from his comments on Plaintiff's financial interest and the boilerplate language, are supported by substantial evidence. Plaintiff asserts that the ALJ's reasons are not supported by substantial evidence and provides a series of items that the ALJ failed to discuss, improperly reconciled, and improperly assessed as bases for his credibility assessment. I will consider each of Plaintiff's assertions of error.

### a.    Lack of Insurance

First, Plaintiff asserts that the ALJ should have mentioned Plaintiff's inability to afford care due to lack of insurance in his credibility analysis. While it is true that the ALJ did not mention this fact in his analysis, it is unclear how it could have helped to demonstrate that Plaintiff's testimony was more credible than not. Further, the ALJ did not discount Plaintiff's credibility on the basis that conservative treatment was inconsistent with her complaints of disabling pain. If he had done so, Plaintiff's lack of insurance would have come into play pursuant to Social Security Ruling 96-7p, which provides that an ALJ may not draw:

> any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment

> without first considering any explanations that the individual may
> provide, or other information in the case record, that may explain
> infrequent or irregular medical visits or failure to seek medical
> treatment.

S.S.R. 96-7P.  For example, the ALJ should consider the claimant's explanation

where the individual "may be unable to afford treatment and may not have access

to free or low-cost medical services."  *Id.*  Similarly, Social Security Ruling 82-59

provides that inability to afford treatment is a justifiable cause for failing to follow

prescribed treatment.  S.S.R. 82-59; *see also McKnight v. Sullivan*, 927 F.2d 241,

242 (6th Cir. 1990) (agreeing with the conclusion that a "condition that is disabling

in fact continues to be disabling in law," when the claimant "cannot afford

prescribed treatment or medicine and can find no way to obtain it." (internal

quotations omitted)).  Here, however, the ALJ engaged in none of the analysis

triggering the need to discuss Plaintiff's lack of insurance, and Plaintiff does not

demonstrate why such a discussion was necessary.

### b.    Inconsistencies in the Evidence

Second, Plaintiff asserts that the ALJ failed to build a logical bridge between

inconsistencies in the evidence and his reason for discounting Plaintiff's

credibility, by not explaining where the inconsistencies existed.  This argument has

merit, as the ALJ's analysis is somewhat cursory.  He points to an MRI Plaintiff

underwent prior to her alleged onset date that showed "mild left paracentral focal

protrusion at L4-5 with no neural compression," but does not explain how that

negates her testimony of disabling pain. The ALJ also notes a March 14, 2011 x-ray that revealed her knee and femur showed no acute fracture. (R. at 32.) Again, it is unclear what relevance this information has because Plaintiff did not testify that she had an acute fracture in her knee or femur. In addition, the ALJ cites to reports from March and April 2011 indicating that Plaintiff had severe chrondromalacia and that the damage to her knee was "severe;" however, this evidence would appear to be *consistent* with Plaintiff's complaints. (R. at 33.) The only real objective evidence to which the ALJ points that could potentially undermine Plaintiff's credibility is a June 2011 report from a one-time urgent care visit demonstrating that she had full range of motion upon musculoskeletal examination. (Id.) Substantial evidence may support the ALJ's credibility analysis on this issue, but as Plaintiff asserts, the ALJ does not "'articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.'" *Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003) (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1994)).

### c.    Normal Gait

Finally, Plaintiff asserts that the ALJ erred by commenting on her "normal gait" when walking into and out of the hearing. (R. at 32.) The ALJ did not err simply by commenting on his observations of her gait at the hearing. *See Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 713 (6th Cir. 1998) (refusing to

disturb the ALJ's credibility determination based on his observations of the claimant's condition and demeanor during the hearing).  However, it is unclear how this observation makes Plaintiff's testimony less credible.  To be sure, Plaintiff asserts during the hearing that she walked with a limp to compensate for her hip pain.  (R. at 56.)  However, she does not allege an inability to walk as a reason for her disability.  Nor does she dispute the evidence in the record that demonstrates her ability to walk fairly normally.  (R. at 710.)  Instead, she asserts that she has disabling knee pain that causes her leg to lock up or collapse at times.  There is nothing about Plaintiff's ability to walk normally into and out of a hearing that makes this allegation any less credible, and while the ALJ's lay observations are permissible, they should not be elevated to the level of medical opinion.  *See Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006).

In sum, the ALJ's reasons for discounting Plaintiff's credibility, as a whole, are not articulated in a manner that allows this Court to trace the path of his reasoning.  While he did not err merely by using boilerplate language or mentioning Plaintiff's financial interest in the proceedings, this "'court may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result." *Pollaccia v. Comm'r of Soc. Sec.*, No. 09-cv-14438, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011).  "'It is more than merely

'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.'" *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (quoting *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).  Here, I conclude that the rest of the ALJ's credibility analysis fails to provide that accurate and logical bridge and does not allow for meaningful review by this Court.

## 2.    Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(b).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  20 CFR § 404.1527(e)(2)(i).  The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring

a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d at 408. To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[4] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

---

[4] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance." S.S.R. 96-5p, 61 FR 34471-0, at *34473. Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

*Id.; see also* 20 C.F.R. § 404.1527(c).

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion," 20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11–CV–11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-805 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the

23

procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir.2006) (quoting *Wilson*, 378 F.3d at 547). *See also, Betty v. Comm'r of Soc. Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

In his opinion, the ALJ assigned "little weight" to Dr. Dell's opinions set forth in two physical residual functional capacity questionnaires. (R. at 33.) The first opinion was completed on April 5, 2013. (R. at 700-703.) Dr. Dell opined

that Plaintiff could sit for fifteen minutes, stand for ten minutes, and stand or walk for under two hours in an eight-hour workday.  (R. at 701-702.)  He further noted that Plaintiff should never crouch.  (R. at 703.)  In the second, completed on February 25, 2014, Dr. Dell opined that Plaintiff would be off task more than 25% of the time, was incapable of even "low stress" jobs, could stand for ten minutes, sit for ten minutes, and stand or walk for under two hours in an eight hour workday.  (R. at 705-706.)  He again noted that Plaintiff was incapable of crouching.  (R.at 703.)  The ALJ discounted these opinions on the bases that they were not supported by Dr. Dell's treatment notes, nor by the other evidence of record, including Plaintiff's normal examinations and her gait at the hearing.  While Defendant is correct that these are all proper bases on which to discount the opinion of a treating physician, the ALJ's analysis suffers from the same defect as mentioned above: there is no logical bridge between the evidence and the result.  For example, the ALJ does not describe *which* of Dr. Dell's treatment notes are inconsistent with his opinion.  Nor does he explain any inconsistency with the record.  Instead, as Plaintiff correctly points out, Dr. Dell's opinion that she could never crouch is consistent with the opinion of the Consultative Examiner, Ernesto Bedia, M.D., who made the same finding.  (R. at 718.)  Again, substantial evidence may support the ALJ's decision to discount Dr. Dell's opinion, but there is nothing in the opinion to guide the Court to what that evidence may be.  As such, I

25

recommend that the Court remand this matter to the Commissioner for further consideration and analysis of Plaintiff's credibility and to re-weigh the opinion evidence in a manner that makes clear the reasons for the weight given, especially as it pertains to Plaintiff's treating physician Dr. Dell.

### 3.     Remand Under Sentence Four

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing."  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue,* 10–207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher,* 17 F.3d at 174); *see also White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) ("If a court determines that substantial evidence does not support the [Commissioner's]

decision, the court can reverse the decision and immediately award benefits only if all factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." (internal quotations omitted)). Here, there is insufficient support for the ALJ's findings and the factual issues have not been resolved. Accordingly, I recommend that the Court remand this case under Sentence Four.

### G. CONCLUSION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the Undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's motion for summary judgment (DE 20), **DENY** Defendant's motion for summary judgment (DE 22), **REVERSE** the Commissioner of Social Security's non-disability finding, and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

27

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 24, 2016          s/Anthony P. Patti
                              Anthony P. Patti
                              UNITED STATES MAGISTRATE JUDGE

28

I hereby certify that a copy of the foregoing document has been sent to parties of record on June 24, 2016, electronically and/or by U.S. Mail.

s/Anthony P. Patti          
Case Manager for the
Honorable Anthony P. Patti
